The Honorable Jay Bradford State Representative P.O. Box 3367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion regarding the legality of constructing and operating a hotel in Pine Bluff Regional Park. You report the following facts:
 The City of Pine Bluff owns the real property comprising Regional Park, which is located in the city. The property was donated to the city by the U.S. Government, with the proviso that the property be used as a park. The city has created a Parks and Recreation Commission, which has charge of the city's parks and recreational facilities.
 Regional Park contains, among other things, Harbor Oaks Restaurant and Golf Course, both of which are open to the public but operated by a private for profit entity. There are also baseball and softball fields, an RV park, boat ramps, etc., maintained by the Parks Commission.
 A proposal has been made for construction of a hotel to be built in Regional Park near Harbor Oaks Restaurant. The realty would be leased to a private entity, which would construct and operate the hotel.[1]
The city would be paid lease payments and receive a percentage of the gross or net proceeds of the hotel's revenues.
Against this backdrop, you have posed the following question:
 May the City of Pine Bluff, consistent with the provisions of A.C.A. Sections 14-269-101 et seq., lease real property in the Regional Park for the construction and operation of a privately operated hotel in the park?
RESPONSE
To answer your question definitively, I would need to conduct an intense inquiry into the facts, including the express conditions under which the U.S. government granted the property to the city. Even assuming the only pertinent condition were that the property "be used as a park," only a finder of fact could determine whether the proposed construction accorded with the parties' agreement, if any, as to what structures and activities belong in a "park."
As an initial matter, I should address what would be the scope of the city's authority if it owned the property in fee simple subject to no restrictions of any sort. Under such circumstances, I believe the described lease and construction might be permissible under the authority of and subject to the conditions set forth in A.C.A. § 14-269-103, which provides in pertinent part:
 (a) Any municipality in this state is authorized to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of any land, buildings, improvements, or facilities of any and every nature whatever necessary or desirable for the developing and providing of public parks and facilities within or near the municipality including, without limitation, recreation areas, stadiums, auditoriums, arts and crafts centers, folklore centers, interpretative centers, camping areas, and other facilities so as to provide for the recreation and cultural needs of its inhabitants and to stimulate and encourage the economic growth of the municipality and its inhabitants; each such undertaking by a municipality shall sometimes be referred to in this subchapter as a "project".
 (b)(1) Any municipality in this state shall have the authority to lease to any individual, firm, or corporation municipal property comprising parks, playgrounds, golf courses, swimming pools, or other property which has been dedicated to a public use for recreational or park purposes, on such terms and conditions as may be desirable or necessary.
* * *
 (3) Any lease under this subsection shall be for a period not to exceed ninety-nine (99) years.
 (4) Those persons or entities holding leases on municipal park and recreational facilities on July 6, 1977, shall have the first option to renew their leases.
(Emphasis added.) As my predecessor noted in Ark. Op. Att'y Gen. No. 91-358:
 [C]ities of the first class are given broad authority in connection with their "municipal affairs." See A.C.A. § 14-43-601 and -602. And the legislature has specifically authorized cities to maintain recreational facilities and operate public recreation programs. A.C.A. § 14-54-1301. See also generally A.C.A. § 14-269-101 et seq. (regarding parks and recreational facilities). It thus seems clear that a public recreational program generally falls within municipal affairs as to which a city may "exercise full legislative power" or" perform any function." See A.C.A. § 14-43-602. Because cities may clearly contract for municipal purposes (A.C.A. § 14-54-101), it may reasonably be concluded that a city has the general authority to contract for the operation of a recreational program.
Notwithstanding the breadth of this statutory authority, I feel obliged to stress that A.C.A. § 14-269-103 limits the city's power to lease park property by requiring that the lease serve "the recreation and cultural needs of its inhabitants" or "stimulate and encourage the economic growth of the municipality and its inhabitants." This restriction does not seem very severe, and a finder of fact might well approve a city's determination that a tastefully designed park hotel, even if privately operated for profit, would constitute an amenity for park visitors, just as the currently existing for-profit golf course and restaurant presumably do. However, determining as much will involve conducting a factual inquiry into such matters as the size of the park, its historical uses, and the size and design of the hotel.
Similarly, only a finder of fact can resolve the remaining question of whether permitting the proposed construction would violate what you report as being "the proviso that the property be used as a park." Answering this question will entail a factual inquiry into such matters as the express terms of the grant and the intentions of the parties.[2]
Assuming the grant instruments do not contain any outright proscription against commercial construction in the park — an assumption that would appear to be warranted in light of the private operation of a park golf course and restaurant — I suspect the pertinent inquiry would be whether additionally building a hotel would undermine the property's character as a "park." This inquiry, of course, would entail an intense factual investigation into the various matters itemized above. I can offer little more than my opinion that if the above quoted state law were used as a guide, some level of commercial activity as a convenience to visitors would appear to be permissible. However, in this instance the agreement of the parties as reflected in the grant instruments will control. Given the factual variables, this matter strikes me as one appropriately addressed by the city attorney, possibly in consultation with representatives of the U.S. government.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] I will assume in my analysis that construction financing would be borne exclusively by the lessee. If the proposed construction were alternatively to be financed by revenue bonds, the issuance of those bonds would need the approval of a majority of the qualified electors voting on the question. Ark. Const. amend. 65 § 2(b); A.C.A. §14-269-105.
[2] Although I assume the federal government's authority to issue and to condition the grant at issue is statutory in origin, I will note that a condition of the sort at issue would be perfectly permissible under the common law of gifts. As I recently noted in Ark. Op. Att'y Gen. No.2001-009:
 "A gift inter vivos must be absolute and, with respect to the immediate vesting of title in the donee, unconditional. . . . [B]ut a donor, by a condition subsequent, may limit his gift to a particular purpose and render it so conditioned and dependent on an expected state of facts that, where that state of facts fails, the gift fails with it, if such condition is not illegal or against public policy. In other words, a condition subsequent accompanying a gift not affecting the donee's title to the property is valid; and the mere fact that a gift absolute in form may be defeated on the happening of a certain event does not invalidate the gift. Whether in a given instance the gift is conditional or absolute is an ordinary question of intention, to be determined by any express declaration in the making of the gift or from the circumstances."
(Quoting Ark. Op. Att'y Gen. No. 96-098, in turn quoting 38 C.J.S. Gifts
at §§ 36 and 37.)